UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

BRANDON MCFERRIN,                    )
                                     )
        Plaintiff,                   )          Civil No. 12-117-GFVT
                                     )
v.                                   )
                                     )          **MEMORANDUM**
ALLSTATE PROPERTY & CASUALTY         )          **OPINION**
COMPANY d/b/a KENTUCKY               )          **&**
MISSISSIPPI AUTO MCO,                )          **ORDER**
                                     )
        Defendant.                   )

*** *** *** ***

This case began with an automobile accident in Leslie County, Kentucky. After the

accident, insurance claims were asserted both against the tortfeasor's insurance company and

against Plaintiff Brandon McFerrin's insurance company. This litigation arises out of the latter

claim. Presently before the Court is Defendant Allstate Property & Casualty Insurance

Company's ("Allstate") Motion for Partial Summary Judgment. [R. 3.] Also before the Court is

Plaintiff McFerrin's Motion for Permission to Supplement his answers to interrogatories. [R.

22.] Even if the Court allows the supplementation, however, the answers provided still are

insufficient to meet McFerrin's burden of proof, and thus summary judgment in favor of Allstate

will be granted and the motion to supplement will be denied as moot.

**I**

On June 6, 2010, Plaintiff McFerrin and another driver were in a motor vehicle accident.

[R. 1 at 7.] The investigating officer who arrived at the scene detected no injuries to either

driver. [R. 20-4 at 3; R. 20-5.] McFerrin denied any need for treatment and drove his car to his mother's place of employment, and then to his sister-in-law's residence. [R. 20-3 at 2; R. 20-4 at 4.] At the urging of his family members, McFerrin eventually reported to the emergency room at the Mary Breckinridge Hospital later that day, reporting pain in his upper back, left shoulder, and left elbow. [R. 20-4 at 4; R. 20-6.] At the hospital, McFerrin had X-rays of his shoulder and elbow, and a CT scan of his spine. [R. 20-8.] According to the reviewing radiologists at the Mary Breckinridge hospital, both the X-rays and the CT scan were interpreted as normal studies with no injuries. [*Id*.] Curiously, however, despite the negative results, McFerrin was transferred to the University of Tennessee Medical Center where he was examined by an orthopedist, Dr. Richard Smith. [R. 20-6 at 3; R. 20-9.]

The record reflects that Dr. Smith examined McFerrin on the next day, June 7, 2010, and that his report directly contradicts the findings of the radiologists at Mary Breckinridge. Neither party explains why McFerrin was transferred to another hospital after the negative results on his initial X-rays, nor why Dr. Smith examined McFerrin, nor have they indicated whether Dr. Smith analyzed different X-rays or CT scans than the ones that were done at Mary Breckinridge. The record presented to the Court also does not explain these facts.[1] Doctor Smith states in his June 7, 2010 assessment that McFerrin had a "[l]eft scapula fracture and [p]ossible T12 fracture." [R. 20-9.] The report further states that "X-rays show a moderate deformity at T12 which may be due to acute fracture ***or could possibly be an old injury***." [*Id*. at 1 (emphasis added).] Doctor

---

[1] Allstate indicates that there are no medical records indicating that McFerrin underwent any additional diagnostic testing after his transfer to Tennessee, or that any X-rays or CT scans were performed on him other than the initial ones that came back showing normal results. [R. 20-1 at 3.] McFerrin does not dispute this assertion or provide any further explanation.

Smith ordered a brace for McFerrin, and then saw him in a follow-up visit later that month.  [*Id*.]

The report from the follow-up visit states that McFerrin could walk "without any difficulty" and

that his fractures were healing.  [R. 20-10.]  Doctor Smith reported that an X-ray showed the

"T12 fracture in good alignment" and notes that he could not even see the fracture present on the

CT scan.[2]  [*Id*.]  McFerrin received pain medication and was told to start "weaning himself off"

of the brace.  [*Id*.]  On July 21, 2010, after another follow-up visit, Dr. Smith reported that

McFerrin's back "is not really bothering him at all," and that he had some tightness in his left

shoulder and about 80% of his normal range of motion.  [R. 20-11.]  Accordingly, Dr. Smith

discharged McFerrin with instructions on some range of motion exercises to work on.  [*Id*.]

McFerrin returned to his normal work duties on July 21, 2010 with no listed work restrictions.

[R. 20-12.]

Allstate emphasizes, and McFerrin does not dispute, that prior to the accident in June,

2010, McFerrin had suffered significant back injuries.  In March, 2001, McFerrin was treated at

Mary Breckinridge Hospital for a neck injury and other minor lacerations suffered in a car

accident.  [R. 20-13.]  Later that same year, McFerrin went to the emergency room again with

complaints of severe back pain after lifting a patient at work.  [R. 20-14.]  In July, 2007, the

Mary Breckinridge emergency records report that McFerrin came in twice – once with further

complaints of severe back pain and once because of musculoskeletal back pain and recurrent

seizure activity, probably due to his fall from a ladder.  [R. 20-15; R. 20-16; R. 20-17.]  After his

fall from the ladder, McFerrin was transferred to Wellmont Holston Valley Medical Center

---

[2] It is unclear whether this is a reference to McFerrin's initial CT scan on June 6, 2010 at Mary Breckinridge.  There are no records presented to the Court of another CT scan, but the radiologist's diagnostic report interpreting the

where he stayed for five days.  [R. 20-16; R. 20-17.]  At the time of his discharge, his pain was described as "rather severe" and he had to walk with a walker.  [R. 20-17 at 2.]  The medical records, dated July 21, 2007, state that his medical history includes chronic back pain and seizures.  [*Id*. at 4.]  In September, 2007, McFerrin began seeing chiropractor Dale Williams for "severe" pain in his lower back.  [R. 20-18.]  According to those records, McFerrin described his pain at that time as constant, and said it interfered with his work, sleep, daily routine, and recreation.  [*Id*. at 1.]  McFerrin further describes his condition as getting progressively worse, and rated the severity of the pain as 10+/10 with no medication and 7/10 with medication.  [*Id*.]  Doctor Williams diagnoses McFerrin as suffering from pain in his thoracic spine and lower back, cervicalgia, and muscle spasms.  [*Id*. at 4.]  That same month, McFerrin saw another doctor, Dr. George Chaney, who gave him further injections of pain medication and referred him to a neurosurgeon. [R. 20-19.]  McFerrin had several follow-up visits with Dr. Chaney, each time complaining of continual back pain, and continuing to receive pain medication injections and narcotic pain medication.  [R. 20-20; R. 20-21; R. 20-22.]  In November, 2007, neurosurgeon Dr. James Bean attributes McFerrin's pain to his fall from the ladder in July of that year and notes that although he was being treated with high dose narcotics he was still not getting relief and still walking with a walker.  [R. 20-24.]  Doctor Bean diagnosed McFerrin as a "[l]eft scapular region thoracic pain syndrome, ***etiology unknown***."  [*Id*. (emphasis added).]  McFerrin states in his answers to interrogatories that at least one doctor had suggested exploratory surgery, but that he had refused to undergo such treatment.  [R. 20-4 at 5.]

initial CT scan does not report any fracture and clearly states that it was a negative study showing no acute compression fracture.  [R. 20-8 at 1.]

Within a few months after the accident at issue in this case, the other driver's insurance company settled McFerrin's claims for personal injuries up to the $25,000 policy limits. [R. 1-1 at 1, 7.] Thereafter, McFerrin alleged that the amount was insufficient and notified Allstate that he desired to claim against the underinsured motorist policy covering the truck McFerrin was driving when the accident occurred. [*Id.* at 3.] A dispute about the dollar value of McFerrin's claim ensued, and McFerrin filed the instant suit, alleging bad faith on the part of Allstate in addition to his claims for damages and allegations concerning the policy coverage. [*Id.*] The case was initially filed in Leslie Circuit Court, and removed to this Court pursuant to its diversity jurisdiction under 28 U.S.C. §1332.[3] The Court previously granted Allstate's motion to bifurcate the claims and stay McFerrin's bad faith claim, pending resolution of his underinsured motorist claim. [R. 6.] Now, Allstate moves the Court to grant summary judgment in its favor on McFerrin's damages claim for medical expenses, pain and suffering, and lost wages.

## II

### A

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). Summary judgment is improper, however, if genuine factual issues exist that "may reasonably be resolved in favor of either party," and therefore must be submitted to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In applying the summary judgment standard, the Court must review the facts and draw all reasonable

---

[3] McFerrin is a resident of Tennessee, Allstate is a citizen of the State of Illinois, and the Complaint alleged that Allstate was contractually obligated to pay McFerrin the $100,000 limit of his underinsured motorist policy.

inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255).

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that a genuine issue exists. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 324). Yet even when construing the evidence in the light most favorable to the non-moving party, the non-moving party still "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushitu Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Rather, the Federal Rules of Civil Procedure require the non-moving party to present "specific facts showing that there is a genuine issue for trial." *Id.* (citing Fed. R. Civ. P. 56(e)).

While Kentucky's substantive law governs the issues involved in McFerrin's UIM and personal injury claim, federal procedural law governs the rules of practice concerning disclosure of witnesses and evidence. *See Hayes v. Equitable Energy Resources, Co.*, 266 F.3d 560, 566 (6th Cir. 2001). In Kentucky, "the interpretation of insurance contracts is a matter of law for the Court" to decide, and is appropriately determined through summary judgment when there are no other factual issues in dispute. *West Am. Ins. Co. v. Prewitt*, 401 F. Supp. 2d 781, 783 (E.D. Ky. 2005), *aff'd*, 208 F. App'x 393 (6th Cir. 2006).

**B**

Allstate primarily contends that McFerrin cannot establish his claims for personal injury damages in this case because such claims require the presentation of expert testimony, and McFerrin has not provided the required information to Allstate concerning any experts that he anticipates calling at trial. To analyze this claim, it is necessary to explain some of the discovery process that has occurred thus far. Allstate served McFerrin with its first set of interrogatories in April, 2013, which included a request for McFerrin to state whether he expected to call any expert witnesses at trial, medical or otherwise, and if so to state the expert's identity, and the subject matter and grounds for their testimony. [R. 20-25 at 2.] McFerrin responded to this question simply by stating "Will Supplement." [R. 20-4 at 2.] Allstate has since submitted written inquiries requesting more completed responses, but counsel for McFerrin never supplemented his answer to the Interrogatory No. 5 concerning expert witnesses, nor has he in any other way identified any medical experts or otherwise addressed his failure to do so other than to say that he would "probably just use a treating Doc as witness." [R. 20-28.] The deadlines in the Court's Scheduling Order specified that McFerrin had to disclose information concerning witnesses who may offer expert testimony by November 25, 2013. [R. 13.] Allstate filed the instant motion in February, 2014, claiming that in reliance on McFerrin's failure to disclose any expert witnesses, Allstate also has not named any opinion witnesses when making its own timely expert disclosures. [R. 20 at 8.]

On February 28, 2014, McFerrin filed his response to Allstate's motion for summary judgment, along with a motion to supplement his answers to the interrogatories. [R. 22.] In the proposed supplemental answers, however, McFerrin lists the names and addresses of people who

are witnesses to the incident out of which the instant litigation arose, but in response to the question about expert witnesses, McFerrin's answer states, "No experts have been retained, nor will be retained." [R. 22-2 at 2.] McFerrin reiterates in his responsive brief that he does not plan to retain any expert witness for purposes of trial, and contends that Dr. Smith "is well able to testify" as to McFerrin's injuries, treatment, and the reasonability of treatment costs. [R. 21-1 at 3.] Allstate maintains, however, that McFerrin must present medical expert testimony in order to establish a prima facie claim for personal injury, and that as McFerrin's treating physician, Dr. Smith is prohibited from offering opinion testimony addressing the issue of causation of McFerrin's injuries because such evidence must be introduced through an expert witness disclosed according to Federal Rule of Civil Procedure 26(a)(2). [R. 23 at 2-3.]

Accordingly, the issues before the Court are 1) whether McFerrin may be permitted to supplement his answers to the interrogatories long after the deadline for doing so has passed, and if so, 2) whether such supplementation is sufficient to survive Allstate's summary judgment motion since McFerrin's answers affirmatively state that he does not intend to present expert testimony at trial. Integrally related to this second issue is whether McFerrin can establish a prima facie claim for the types of personal injury damages that he requests without presenting opinion testimony of one or more medical experts.

**1**

The first point of analysis is the requirements for disclosure of witnesses under the Federal Rules of Civil Procedure. Under Federal Rule 26, potential witnesses are divided into three categories for purposes of disclosure. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 (7th Cir. 2004). First, for fact witnesses, the parties must disclose the name and contact

information "of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses. . . ." Fed. R. Civ. P. 26(a)(1)(A). The parties must disclose this first group of potential witnesses "at or within 14 days" after the parties Rule 26(f) conference unless otherwise specified by the court. Fed.R.Civ.P. 26(a)(1)(C). Rule 26(2)(A) governs disclosures of the second group of potential witnesses, pursuant to which the parties "must disclose *the identity of any witness it may use* at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed.R.Civ.P. 26(a)(2)(emphasis added). These witnesses are in addition to the fact witnesses who must be disclosed under Rule 26(a)(1). The final group includes those expert witnesses who have been "retained or specially employed to provide expert testimony in the case," and the disclosure of such witnesses "must be accompanied by a written report" that has been "prepared and signed" by the expert witness. Fed.R.Civ.P. 26(a)(2)(B).

It is particularly important to note that the Federal Rules specify two categories of expert witnesses, and that only those who have been specifically retained for trial need to provide the accompanying report. However, witnesses who will provide expert testimony still must be disclosed as expert witnesses even if they were not retained for purposes of trial, at least under the provision in Rule 26(a)(2)(A). The Federal Rules of Evidence referenced by Federal Rule of Civil Procedure 26(a)(2)(A) determine what must be disclosed as expert testimony. "Expert testimony is designated as such by its reliance on 'scientific, technical, or other specialized knowledge.'" *Musser*, 356 F.3d at 757 n.2 (quoting Fed.R.Evid. 702). For those witnesses who will provide such expert testimony but who need not provide a written report, the disclosure still must state "the subject matter on which the witness is expected to present evidence" and "a

summary of the facts and opinions to which the witness is expected to testify." Fed.R.Civ.P. 26(a)(2)(C). Thus, a party must disclose the identity, subject matter, and a summary of the expected testimony for any witness who will give opinion testimony relying on "scientific, technical, or other specialized knowledge," even if that witness has not been specifically retained for trial. Fed.R.Evid. 702; *see also Musser*, 356 F.3d at 757. Parties are required to make these disclosures "at the times and in the sequence that the court orders," but "at least 90 days before" trial, or within 30 days after the other party's disclosure if the witness is intended solely to rebut the other party's evidence. Fed.R.Civ.P. 26(a)(2)(D).

Federal Rule 26 also contemplates the need for supplementation of these disclosures by requiring parties to "supplement or correct" their disclosures, as well as their responses to interrogatories and requests for production, "in a timely manner" whenever the party realizes that its disclosure or response "is incomplete or incorrect," or as ordered by the court. Fed.R.Civ.P. 26(e)(1). Whenever a party fails to disclose a witness in any of the three categories described by Rule 26(a), or when the party fails to supplement as required by Rule 26(e), the Federal Rules prohibit that party from using such information or witness to give evidence at trial "unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).

Here, the record reflects that Allstate timely filed their initial disclosures pursuant to Federal Rule 26(a)(1) on June 10, 2013 [R. 15], but that McFerrin apparently never filed such initial disclosures. Allstate had previously served interrogatories on McFerrin in April, 2013, specifically requesting the names and addresses of any fact witnesses, to which McFerrin simply responded by stating "Will Supplement, if any," and then named only "Brandy Pence who came to the scene of accident," and whose address would be provided "when I can find it." [[R. 20-4

10

at 1.]  McFerrin apparently never supplemented any of these answers to the interrogatories.

McFerrin also never filed any expert disclosures under Rule 26(a)(2)(A) or (a)(2)(B).  Allstate

has timely notified the Court that "[i]n reliance upon [McFerrin's] apparent position that he will

not present any evidence pursuant to Federal Rules of Evidence 702, 703, or 705," Allstate has

also not disclosed or retained any expert witnesses.[4]  [R. 19 at 1.]  The deadlines for all

disclosures, discovery, and supplementation have long since passed, and to the Court's

knowledge, McFerrin has not submitted any Rule 26 disclosures in any of the required forms.

On February 28, 2014, McFerrin filed a motion for an order permitting him to file supplemental

answers to the interrogatories, which were due on June 30, 2013.  [R. 22.]  McFerrin's proposed

supplementation only provides the names and contact information of Brandon McFerrin,

Stephanie Clemons, Rebecca Creech, Brandy Pence, and Dr. Richard Smith [R. 22-2 at 1], and

then later states that "No experts have been retained, nor will be retained."  [*Id*. at 2.]

Given the standard explained above, in order to avoid the sanction mandated by Federal

Rule of Civil Procedure 37(c)(1), McFerrin has the burden of establishing that his failure to

supplement the interrogatories was either "substantially justified or is harmless."  Fed.R.Civ.P.

37(c)(1); *Roberts v. Galen of Va., Inc*., 325 F.3d 776, 782 (6th Cir. 2003).  The only justification

provided for this failure is McFerrin's statement that the deadlines for filings were changed once,

and that a staff member of his counsel's law office had the responsibility to answer or

supplement the interrogatories but had left the office without doing so.  [R. 21-1 at 1-2.]

---

[4] The Court notes that Allstate reasonably relies on the fact that McFerrin has not filed any Rule 26(a) disclosures in any of the three categories, nor has he supplemented or otherwise updated his responses to Allstate's interrogatories concerning witnesses.

McFerrin's counsel acknowledges that this oversight "should have been caught and reviewed but was not." [*Id*. at 2.] McFerrin's counsel argues, however, that this oversight is "harmless" because Allstate has possessed information concerning McFerrin's medical bills and records for three years, and thus there "have been no secrets about Plaintiff's treatment or the costs incurred." [*Id*. at 2-3.] Moreover, McFerrin's counsel seems to assert that because no expert has been retained specifically for purposes of trial, there is no need to file any disclosure concerning witnesses beyond the simple list of names and contact information listed in his proposed answers to the interrogatories. [*Id*.] Counsel for McFerrin simply directs Allstate to the large number of medical records which Allstate possesses as sufficient for meeting the standard of the required disclosures, stating that Allstate "has not been prejudiced by any surprising new evidence in these old materials, all previously supplied." [*Id*.]

First, it is important to note that the standard for whether supplementation should be permitted is whether the failure is "harmless," not whether Allstate has been prejudiced by it. *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003). The purpose of Rule 26 disclosures of witnesses, both fact witnesses and expert witnesses, is to enable the parties to adequately prepare for trial. The commentary to Rule 26 states that the duty to disclose "extends to witnesses that the other party already knows of and to documents that the other party already knows of or even possesses." Even if Allstate could have guessed that McFerrin would call Dr. Smith as a witness, the commentary further explains as follows:

> The fact that the other party already knows of a potential witness or has a document, does not, by itself, achieve a critical purpose of the Rule 26(a)(1)(A) disclosures, which is to inform the other parties which witnesses and documents the disclosing party may use to support its claim or defenses.

Fed.R.Civ.P. 26, Practice Commentary. The Rule itself also provides that "all disclosures under Rule 26(a) must be in writing, signed, and served." Rule 26(a)(4). Thus, neither the fact that Allstate may have known the identities of several doctors who had examined McFerrin, nor the fact that Allstate was in possession of a large number of medical records is enough to discharge McFerrin's duty to properly and formally disclose witnesses, records, and other evidence as required by Rule 26. McFerrin has not met his burden of establishing that his failure to disclose Dr. Smith under Rule 26(a)(1) nor his failure to supplement the answers to interrogatories was substantially justified or harmless.[5]

For the sake of argument, however, even if McFerrin is allowed to supplement his responses, the information he wishes to include still fails to meet the requirements of Rule 26(a),[6] and is also insufficient to overcome Allstate's motion for summary judgment. Crucial to this determination is who qualifies as an "expert" for purposes of Rule 26(a)(2) disclosures. McFerrin's responsive brief seems to assume that the definition of "expert" depends only on whether a witness has been specifically retained for purposes of trial, thus requiring an accompanying expert report as described in Rule 26(a)(2)(B). [R. 21-1 at 3.] However, as explained above, the relevant inquiry as to whether a witness is considered an expert, and is required to be disclosed under Rule 26(a)(2), "is the nature of the testimony rather than the status

_____

[5] Particularly where expert testimony is concerned, the "[f]ormal disclosure of experts is not pointless." *Musser*, 356 F.3d at 757. Indeed, the failure to formally disclose expert witnesses as required by Rule 26 is generally harmful to the other party because of the many possible countermeasures that must be considered by the opposing party. *Id.* McFerrin contends that Dr. Smith is not an expert witness – a contention that will be further dealt with below – but even if Dr. Smith only testifies as a fact witness, McFerrin has not fulfilled the disclosure requirements of Rule 26(a)(1) for Dr. Smith either.

[6] The Court notes that although the parties' contentions focus on Dr. Smith's testimony as a treating physician, the names of the potential witnesses in McFerrin's proposed supplemental answers to the interrogatories are not accompanied by the required subjects of discoverable information they may have. *See* Fed.R.Civ.P. 26(a)(1)(A)(i).

of the witness." Fed.R.Civ.P. 26, Commentary. The Commentary to Rule 26 explains that just because a witness has a certain expertise does not make him an expert witness "so long as his testimony is going to be limited to that of a fact witness." *Id.* If, on the other hand, the witness is going to testify as to his opinion concerning "scientific, technical, or other specialized knowledge," Fed.R.Evid. 702, then such witnesses "must be identified as such under Rule 26(a)(2)(A) even if they were previously disclosed as individuals with discoverable information under Rule 26(a)(1)," because listing someone "as a supporting witness does not alert the opponent to the possible need to take the types of countermeasures specially associated with experts." Fed.R.Civ.P. 26, Commentary; *see also Musser*, 356 F.3d at 757-758. Although McFerrin is correct that the requirement of an expert report as described in Rule 26(a)(2)(B) depends on whether the witness has been specifically retained for purposes of trial, he must still disclose anyone giving expert testimony under 26(a)(2)(A) even if the report is not required. *See Blair v. Geico* at 655 (explaining that even when an expert witness report is not required, the disclosure of any expert witness must at least "state the subject matter, facts, and opinions to which the expert witness is expected to testify") (quoting Fed.R.Civ.P. 26(a)(2)(C)); *see also Tribble v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2012) (explaining that Rule 26(a)(2)(A) requires the disclosure of any person who may present evidence under the Federal Rules of Evidence governing expert testimony even if they have not been specifically retained for trial).

Interestingly, McFerrin does not request leave to supplement his expert disclosures. Instead, McFerrin requests to supplement his answers to interrogatories, presumably in lieu of supplementing his Rule 26(a)(1) disclosures. Additionally, McFerrin does not differentiate among any of the three categories of witnesses discussed above. Instead McFerrin insists that

Dr. Smith is not going to testify as an expert witness,[7] and further contends that as McFerrin's treating physician, Dr. Smith "is well able to testify to the broken bones, the injuries, the course of Plaintiff's treatment, and the reasonableness of the costs set out in the records." [R. 21-1 at 3.]

There are two main problems with this position. First, although treating physicians do not automatically have to be disclosed as experts under Rule 26(a)(2), treating physicians and treating nurses "must be designated as experts if they are to provide expert testimony" as defined in Federal Rule of Evidence 702 discussed above. *Musser*, 356 F.3d at 758. McFerrin is correct that an expert report is generally not required for a treating physician who will testify regarding the course of treatment. If, however, the treating physician testifies "beyond the scope" of the treatment rendered and gives opinion testimony based on his "scientific, technical, or otherwise specialized knowledge," then the treating physician is still testifying as an expert witness, and at the very least must be disclosed according to the requirements in Rule 26(a)(2)(A) and (C), and Rule 26(a)(4), which McFerrin has not done with regard to Dr. Smith. *Fielden v. CSX Transp. Inc.*, 482 F.3d 866, 869 (6th Cir. 2007); *Musser*, 356 F.3d at 757. Accordingly, if the Court allows supplementation of McFerrin's interrogatory responses, and if Dr. Smith is not going to give expert testimony as McFerrin claims he will not, then Dr. Smith will be limited to providing testimony only as a fact witness. This means that Dr. Smith may testify without an expert report "'so long as [he] does not purport to testify beyond the scope of [his] own diagnosis and treatment.'" *Fielden*, 482 F.3d at 870 (quoting *Ridder v. City of Springfield*, 1997 WL 117024, at *4 (6th Cir. March 13, 1997)). Courts are often concerned that permitting treating physicians

---

[7] The Court presumes that such a statement must mean that McFerrin intends Dr. Smith to testify only as a fact witness under the first category in Rule 26(a)(1).

to testify without providing expert reports can allow parties to circumvent the purposes of Rule 26. *Id.* at 870. Indeed, "when the nature and scope of the physician's testimony strays from the core of the physician's treatment, Rule 26(a)(2)(B) requires the filing of an expert report from that treating physician." *Id.* (citing other sources).

To summarize, McFerrin has not properly disclosed Dr. Smith as a witness according to the requirements of Rule 26(a) for any of the three categories of witnesses. If the Court allows the supplementation McFerrin has requested, the proposed answers to interrogatories still do not satisfy the requirements for either fact witnesses or expert witnesses. If the Court were to construe the proposed answers as sufficient to at least allow Dr. Smith to testify as a fact witness under Rule 26(a)(1), and as McFerrin seems to request, then Dr. Smith still will be prohibited from presenting opinion testimony as contemplated by the Federal Rules of Evidence because McFerrin has not, nor does he intend to, introduce Dr. Smith as an expert witnesses in either of the two categories described in Fed. R. Civ. P. 26(a)(2).[8] Thus, Dr. Smith will only be allowed to testify as a fact witness under Rule 26(a)(1), and, as such, will be limited to testifying as to the course of treatment and to what he directly observed while McFerrin was under his care.

**2**

Such limitations on Dr. Smith's testimony bring us to the second problem with McFerrin's position. McFerrin has presented claims for medical expenses, pain and suffering,

---

[8] The Court need not reach the issue of whether McFerrin can supplement his disclosures in order to introduce Dr. Smith as an *expert* witness under Rule 26(a)(2) because McFerrin has affirmatively stated that he does not intend to do so. Were he to request such permission, however, the motion would be denied because McFerrin could not meet the standard of showing substantial justification or harmlessness, especially. Moreover, the Sixth Circuit has upheld exclusion of such testimony as the "automatic and mandatory" sanction for a party's failure to make required disclosures. *See, e.g., Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004).

and lost wages, all based on his personal injury claims. Kentucky law generally requires expert testimony to prove claims of personal injury such as are advanced in this case. *See Blair*, 917 F.Supp. 2d at 655. In personal injury cases, Kentucky allows recovery of "necessary and reasonable expenses for medical services." *Langnehs v. Parmelee*, 427 S.W.2d 223, 224 (Ky. 1967). However, to establish such a claim, McFerrin must demonstrate that the injury for which he incurred the medical expenses at issue was caused by the car accident. In a UIM claim such as this, "Kentucky law usually requires expert or medical testimony to establish that an incident legally caused a medical injury." *Blair*, 917 F.Supp.2d at 657 (quoting *Lacefield v. LG Electronics, Inc.*, 2008 WL 544472, at *3 (E.D.Ky. 2008)). Kentucky courts recognize an exception to this rule for "situations in which causation is so apparent that laymen with general knowledge would have no difficulty in recognizing it." *Id*. Except for such situations, however, the general rule is that "the causal connection between an accident and an injury must be shown by medical testimony and the testimony must be that the causation is probable and not merely possible." *Jarrett v. Saltz*, 2007 WL 4355449, at *3 (Ky.App. 2007) (citing *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965)); *see also Goodwin v. CSX Transp., Inc*., 2010 WL 4226454, at *2 (W.D.Ky. Oct. 21, 2010) (citing the same); *Tatham v. Palmer*, 439 S.W.2d 938, 939 (Ky. 1969) (applying this rule in the context of an automobile accident). "The necessary expert testimony may be supplied by the defendant's admission during discovery, or through medical evidence obtained from other treating physicians." *Vance By and Through Hammons v United States*, 90 F.3d 1145, 1148 (6th Cir. 1996).

Here, to the Court's knowledge, Allstate has made no express admissions as to causation of McFerrin's injuries, and McFerrin has stated that Dr. Smith will not be providing expert

testimony in this case. Thus, McFerrin can only establish causation if his situation fits into the exception to the general rule explained above – i.e, if the cause of his injuries is so apparent that lay members of the jury could easily determine whether and to what extent the June 6, 2010 accident caused those injuries. However, McFerrin's situation is clearly not one in which causation is so apparent that expert testimony is unnecessary because of his extensive history of back problems, and because the reports of the doctors analyzing his initial X-rays contradict Dr. Smith's later diagnosis. While Dr. Smith may testify as a treating physician concerning his observations of McFerrin and his own treatment and diagnosis, Dr. Smith can only testify as a fact witness, and cannot testify as to his professional opinion concerning the cause of McFerrin's alleged fracture when McFerrin's past medical records show he had a pre-existing condition of back pain and other past injuries to his neck and back.

Kentucky courts have allowed the issue of causation to be submitted to a jury apart from expert testimony only in the context of cases where causation was easily determined. For example, in *Tatham v. Palmer*, 439 S.W.2d 938, (Ky. 1969), the plaintiff was in a car accident in which his head hit the windshield causing extensive lacerations that resulted in considerable bleeding. Following the accident, the plaintiff suffered from debilitating headaches which he never had before his accident, and at the time of trial he still had significant scars on his forehead and chin that were plainly visible to the jury. *Id*. at 940. The court determined that the uncontroverted evidence in that situation, combined with the fact that the plaintiff did not have a pre-existing problem with headaches, did not require expert medical testimony from a treating physician because "it is within the realm of common knowledge that a severe blow to the head will cause headaches." *Id*. at 939. Yet even in reaching that conclusion the court cautioned that

its conclusion in that case "does not mean we are departing from the rule requiring medical evidence to show causation when the claimed internal or external injuries allegedly resulting from the accident are not within the realm of common knowledge." *Id*.

In McFerrin's case, his history of back pain and the contradictory medical records concerning both the extent and cause of his injury "demonstrate that this is not the kind of injury in which the causal connection is within the common knowledge of a jury." *Blair* at 658 (finding that plaintiff's history of neck pain negated any argument that causation of her injury was obvious enough that expert testimony was unnecessary). McFerrin's medical records and deposition testimony show that not only has he had a long history of severe back pain and has suffered previous injuries to his back, but also that several previous doctors have been so uncertain as to the exact cause and origins of his pain that at least one of them suggested exploratory surgery prior to the accident at issue here. [See R. 20-17 through R. 20-24; R. 20-4 at 5.] Surely, in such circumstances where doctors have been unable to determine causation, a jury of lay people cannot be expected to determine without expert medical testimony how much of his current pain is attributable to his most recent accident rather than his previous accidents. In this situation, Dr. Smith's testimony as a fact witness, therefore, will not be able to demonstrate to a lay jury that causation "is probable and not merely possible," as McFerrin must show in order to establish causation. *Jarrett*, 2007 WL 4355449, at *3. Thus, apart from offering expert medical testimony, McFerrin will not be able to establish causation, and therefore fails to make even a prima facie case as to his personal injury claim. *See Fielden v. CSX Transp., Inc*., 482 F.3d 866, 869 (6th Cir. 2007) (finding that without expert testimony on the issue of causation, there was no genuine issue of material fact on an essential element of the claim).

Moreover, McFerrin does not dispute that he must demonstrate causation in order to establish his UIM claim, nor does he contend that the issue of causation is "so apparent" that a lay jury would "have no difficulty in recognizing it" such that he can present the issue to a jury apart from medical expert testimony. *Jarboe*, 397 S.W.2d at 778. McFerrin's response actually concedes that the two primary issues in his case involve which medical bills and which injuries are attributable to the June 6, 2010 car accident, but he presents no legal argument or evidence to contradict Allstate's contention or the Court's conclusion that Kentucky law requires him to establish these claims with expert testimony. [R. 21-1 at 3-4.] Accordingly, McFerrin has not met his burden of presenting at least some specific facts showing that a genuine dispute exists, and summary judgment must be entered in favor of Allstate. *See Celotex Corp.*, 477 U.S. at 324; *Goodwin*, 2010 WL 4226454, at *2 (granting summary judgment to defendant because plaintiff's failure to produce expert testimony supporting medical causation "is fatal" to a personal injury claim and "must result in dismissal by entry of summary judgment").

## C

Finally, Allstate also requests summary judgment on McFerrin's claims for damages for his pain and suffering and for lost wages. McFerrin may only recover damages for pain and suffering as provided in the Kentucky Motor Vehicle Reparations Act, which Allstate contends McFerrin has failed to do. [R. 20-1 at 12.] That statute requires plaintiffs seeking such damages arising from a motor vehicle accident to demonstrate that such damages were suffered

> because of bodily injury, sickness or disease arising out of the ownership, maintenance, operation or use of such motor vehicle only in the event that the benefits where are payable for such injury as 'medical expense' or which would be payable but for any exclusion or deductible authorized by this subtitle exceed one thousand dollars ($1,000), or the injury or disease consists in whole or in

part of permanent disfigurement, a fracture to a bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of bodily function or death.

KRS 304.39-060(2)(b). In light of the Court's conclusions concerning McFerrin's need to present expert testimony to establish causation, and given that McFerrin does not intend to present such testimony and would be prohibited from doing so, McFerrin cannot demonstrate that his medical expenses over $1,000 were reasonably related to the accident at issue. Neither can McFerrin show that his injury is of the type listed in the statute without expert medical testimony. This is particularly true given the fact that even Dr. Smith's own medical report on June 7, 2010 stated that the injuries reflected on the June 6, 2010 X-ray could have been due to "an old injury." [R. 20-9.] Even some medical reports concerning McFerrin's back and shoulder pain that he had before June, 2010 stated that the etiology was "unknown." [R. 20-24.] As explained above, given such conflicting evidence in the record concerning the causes of McFerrin's current and past back and shoulder pain, expert testimony would be required to determine causation. Moreover, McFerrin has not even addressed, let alone presented evidence to dispute Allstate's claim that he cannot meet the threshold requirement of KRS 304.30-060(2) without expert testimony, and when a plaintiff fails to meet that requirement, Kentucky law requires dismissal. *See, e.g., Higgins v. Searcy*, 572 S.W.2d 623, 624 (Ky. App. 1978) (affirming trial court's grant of summary judgment when plaintiff failed to meet the required threshold of KRS 304.39-060(2) because she could not establish that she incurred medical expenses in excess of $1,000); *see also Parsons v. FedEx Corp.,* 360 F. App'x 642, 645-46 (6th Cir. 2010) (affirming award of summary judgment under federal standards when the non-moving

party "fails to show the existence of an essential element for which that party bears the burden of proof") (citing *Celotex Corp.*, 477 U.S at 324).

The analysis is similar with regard to McFerrin's claim for lost wages. Once again, McFerrin cannot establish causation, and thus, given his previous back injuries and pain, he will not be able to establish that the problems related to any lost wages were necessarily caused by this accident. Perhaps more importantly, however, the record reflects that the accident at issue occurred on June 6, 2010, but that McFerrin returned to work on July 21, 2010 with no limitations on his normal work duties. [R. 20-12.] McFerrin has presented no evidence that he has missed work since July 21, 2010, or that his injury was permanent such that he will miss work in the future, and thus he cannot establish a claim for present or future lost wages. He also has not demonstrated how the amount he may have lost due to missing work between June 6 and July 21, 2010 could mathematically add up to the amount of lost wages he claims he is entitled to. [*See* R. 22-3.] As before, McFerrin's lack of response and lack of evidence to refute Allstate's claim on this issue fails to demonstrate the existence of any genuine dispute concerning this claim, and Allstate will be granted summary judgment accordingly. *See Celotex Corp.*, 477 U.S. at 324.

### III

Accordingly, and the Court being sufficiently advised, it is **HEREBY ORDERED** as follows:

(1)     Allstate's Motion for Partial Summary Judgment [**R. 20**] is **GRANTED**;

(2)     All of McFerrin's claims against Allstate for underinsured an/or uninsured motorist coverage are hereby **DISMISSED WITH PREJUDICE**;

22

(3)     In light of the Court's analysis that even if McFerrin is permitted to supplement his answers to interrogatories, he still cannot meet his burden of proof in order to survive summary judgment, McFerrin's Motion to Supplement [**R. 22**] is **DENIED as MOOT**;

(4)     The Final Pretrial Conference scheduled for July 14, 2014, and the Jury Trial scheduled for July 28, 2014, are hereby **CANCELLED**;

(5)     The Court's conclusion that McFerrin cannot establish the elements of his UIM claim is necessarily dispositive of McFerrin's bad faith claim as well, which the Court previously bifurcated and stayed [R. 6], and thus McFerrin's bad faith claim is also DISMISSED; and

(6)     An appropriate judgment will be entered contemporaneously herewith.

This 27th day of June, 2014.

**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**